Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is David Zimmer, and I'm representing the petitioner, Mr. Andrade, in this case. And thank you again for taking the case. Oh, it's my pleasure. I'd like to reserve five minutes for rebuttal, if I could. The BIA erroneously applied the categorical and modified categorical approaches in affirming Mr. Andrade's removability. The government rests its entire defense of the BIA's decision on a single argument, and because that sole remaining argument is incorrect, this Court should grant the Specifically, the government argues that Mr. Andrade's California conviction for child endangerment or child abuse is categorically a crime of child abuse, even though it criminalizes conduct that inflicts no actual injury on the child and has a mens rea of only criminal negligence. This argument directly conflicts with this Court's decision in Forgozo and the Tenth Circuit's recent decision in Ibarra. Is that true with regard to the felony child abuse provision versus the misdemeanor statute? Yes, Your Honor. The – both of those – both of those provisions criminalize conduct that requires no actual harm be inflicted on the child, and both of those provisions have a mens rea of criminal negligence. I thought – I thought our decision in Forgozo indicated that the misdemeanor provision only requires some possibility of harm, while the felony portion provision requires actual harm. Am I misreading that case? Yes, Your Honor. With all due respect, you are misreading it. So there is a provision, section 273d, which does require actual harm. The difference between the misdemeanor and felony conviction is that the felony – the felony provision covers situations in which there is a likelihood – it's likely that harm will occur to the child, while the misdemeanor provision covers situations other than those where there's likely to be harm to the child. So – but both of those statute – both of those provisions include conduct in which there's no actual harm inflicted on the child. And both the clear language of the statutes and the California cases are quite clear in that regard. The California Supreme Court's decision in People v. Vasquez is perhaps the most straightforward explanation of the felony provision, and it makes clear that not only is there no requirement that actual harm be inflicted on the child, but that the defendant does not even need to have a subjective awareness of the risk that the California Supreme Court gave the example of a parent who leaves a child with a babysitter, where there is a risk of harm when leaving a child with a babysitter, even if the parents are not aware that there is that harm. So that's a far cry from Fregoso, which actually did require that there be some actual injury, where 273aa requires no actual injury, does not require subjective awareness of the risk, and has a mens rea of only criminal negligence. I think in this regard, it's helpful to compare 273aa to Section 273d, because 273d is exactly the same as 273aa, except that it does not include this endangerment provision. So while Section 273d criminalizes child abuse and only child abuse, 273aa criminalizes child abuse but also child endangerment with a mens rea of only criminal negligence. And under this Court's decision in Fregoso, that is not enough to constitute a crime of child abuse. The BIA has subsequently disagreed with this Court's decision in Fregoso and Sorum, and in Sorum the BIA held that even a crime that criminalized noninjurious conduct with a mens rea of only criminal negligence is categorically a crime of child abuse. And that's the reason, because the BIA's decision in Sorum directly conflicts with language in the INA as well as the Supreme Court's decision in Taylor and is therefore invalid under Step 1 of Chevron. And really the BIA made two crucial errors in its decision in Sorum. First, the BIA relied in defining the generic federal crime of child abuse. The BIA relied on States' civil statutes rather than States' criminal statutes. And that ignores the provision in the BIA, which – in the INA, sorry, which specifically refers to crimes of child abuse. And it also ignores the Supreme Court's decision in Taylor, which instructs Federal courts when developing generic definitions of crimes to look to States' criminal codes, not to States' civil codes. And this, of course, makes sense, because civil statutes are likely to define prohibited conduct more broadly than criminal statutes because criminal statutes impose more draconian consequences. The BIA's second error was looking at State statutes that were in effect at the time of the BIA's decision in Sorum, rather than at the time that the crime of child abuse language was added to the statute. And again, this is a crucial mistake because what the Supreme Court said in Taylor was that courts are supposed to look to contemporaneous State statutes, contemporaneous as of the time that the relevant language was added to the statute. And again, this makes practical sense as well, because the point in developing generic crimes, generic definitions of Federal crimes, is to figure out what the Congress that added those terms to the statute intended it to mean. And what State statutes said decades after the relevant language was added to the statute says little about what the 1996 Congress intended the phrase crime of child abuse to mean. The Tenth Circuit recognized these crucial mistakes in its Ibarra decision and conducted the correct analysis, looking to States' criminal statutes in effect in 1996, and concluded that the majority of States in 1996 did not criminalize noninjurious conduct with the mens rea of only criminal negligence. We would urge this Court to reach the same decision here and conclude that Sorum is invalid, and continue to apply this Court's prior decision in Fergozo. And again, under Fergozo, crimes, State crimes that require no actual injury to the child are not categorically crimes of child abuse. Turning to the modified categorical approach, the modified categorical approach does not help the government because Mr. Andrade was charged with violating every single prong of Section 273aA, including the endangerment prong. What do we do with his admissions? Well, Your Honor, the — are you speaking of the — Before the immigration judge. Before the immigration judge. Well, Your Honor, in Perez Mejia, this Court held unequivocally that — that in the evidence — evidence from the evidentiary phase of an immigration proceeding is not relevant in applying the categorical approach and modified categorical approach. So the admissions certainly were relevant in adjudicating the cancellation of removal application, but they're not relevant in applying — So they can be considered for that purpose in terms of assessing the character of the petitioner who's applying for the relief of cancellation of removal. That's exactly right. And the I.J. did apply that. And we're not challenging the — the I.J.'s discretionary denial of cancellation of removal here. I'm just trying to understand why that makes sense. I mean, why are they not admissions of a party recognized in the rules of evidence and therefore recognizable? Well, Your Honor, in applying the categorical approach, the actual — the courts don't look to the actual facts of the underlying offense. They look to the elements of the state conviction. But we can look, even under the modified categorical approach, to admissions that are made in the plea colloquy. And why — why are these statements any different if they're made under oath before the immigration judge? Well, as a purely technical reason, Your Honor, because this Court already held that they could not be considered in para — in pars me here. But getting — I'm asking why that — why does that decision make any sense in light of the rules of evidence? Well, so, Your Honor, because in applying the modified categorical approach, as the Supreme Court has held over and over again, it all comes down to what the alien or what the defendant was convicted of. And that word conviction, as the Supreme Court has held over and over again, is the key driver of the categorical approach. And so this — So the lady justice is blind? Well, Your Honor — We don't really care what he did. We just look at the technical statutory definitions, and if you can't make it on that, then we're done? Is that what Descamps tells us to do? Well, Your Honor, I think that's actually exactly what Descamps tells courts to do in applying the categorical and modified categorical approaches, that the point is to look at the — what the defendant necessarily admitted when they pled guilty, to see what prong they necessarily admitted when they pled guilty, and see whether that prong of the statute corresponds directly or is included within the generic Federal definition of a crime. And — And end it there? Sorry? And end it there? And end — All we look at is the allocution, the admission itself? We have no other — no other recourse to any other information? That's correct, Your Honor, and that's exactly what the Supreme Court has held over and over and over again. I mean, every time courts, including this Court, have tried to expand the documents that can be considered or the applications of the modified categorical approach, the Supreme Court has explicitly said, again, most recently in Descamps, no, this is actually a very straightforward inquiry. We start with the categorical approach. We look at the statute as a whole and whether or not it corresponds — whether it necessarily admits a violation of the generic Federal offense. If it's overbroad in limited circumstances where there's an alternative list of elements, then the Court can look to see whether the defendant necessarily admitted pleading guilty to one of those alternative elements. That gets back to my — to my question, then, what — why — and I think the answer is Mejia, but, you know, why are the admissions that he makes, which clearly address that issue under the modified categorical approach, why are they any different from admissions he may have made at the time that he entered the plea of guilt? Well, because they happen decades later, Your Honor, and so they don't go to what Mr. Andrade was admitting. The question is, did he — did he commit actual harm to the child? And we know from what he told the immigration judge that he struck his son on the forehead and it left enough of an injury that the son had to seek medical attention. Well, Your Honor, but again, I think the question is actually — He must have been convicted of a felony for that. Well, Your Honor, but the question is actually not whether he can — I mean, the question under the categorical and modified categorical approach is actually not whether he inflicted actual harm on a child. The question is whether he was convicted of a crime that necessarily admits inflicting actual harm on the child. I understand. Maybe I didn't do a very good job of posing my question. I was thinking of the situation where the statute is divisible, and therefore you can look under the modified categorical approach — or excuse me, indivisible. I always get the two confused. But you then can look to certain limited judicially noticeable documents. Right. But again, I think that those documents have to be documents that are related to the conviction, or else they don't go to the question of what he admitted when he was pleading guilty. And I think the Supreme Court makes that — has made that clear over and over again, that — I mean, you know, he could testify in numerous civil proceedings or whatever, and that's simply irrelevant. Your Honor, if I could, I'd like to reserve this. Oh, sorry. I want to ask you a question before you wrap up. Yeah, of course. I thought that he conceded removability. Well, Your Honor, no. What Mr. Andrade conceded is he conceded that he was convicted of the charges that were listed in the notice to appear. But the IJ's questions to Mr. Andrade in asking him whether he conceded removability never really are clear enough such that someone in his position would understand that he was actually conceding forever that he was removable. And again, the government's brief doesn't challenge that. The government's brief doesn't argue that it introduced the clear and convincing evidence necessary to establish a concession of removability. All right. Thank you. Thank you. Thank you. We'll hear from the government. May it please the Court, my name is Lance Jelle. I represent the Respondent, the United States Attorney General. There's two obstacles that we, that prevents us first before getting to the analysis of his conviction. The first is he failed to exhaust his administrative remedies in regards to this child abuse conviction. And in his initial appeal to the Board, he made no challenge whatsoever regarding his removability for that offense. But didn't the BIA address the issue, though? No, it did not. It merely acknowledged. In fact, on its May 16, 2011, decision, it says, we note parenthetically that the Respondent has not challenged the immigration judge's findings as to his 2010 California felony child abuse conviction, and that it subjects him to removal as having been convicted of a crime of child abuse. So it merely acknowledged that he failed to challenge it. And in the later subsequent decision, November 23, 2011, the Board doesn't even address it. The Board says, there's notes, a footnote, it says, the Respondent also makes arguments relating to his statutory eligibility for relief. We need not address those issues as the immigration judge fully considered the Respondent's application. I have questions whether he merits cancellation or removal. The Board has not, did not address it. And so that, so his failure to exhaust should not be excused by this Court. So your position is he, at no point in the administrative proceedings did he challenge the 2010 conviction for child abuse? In his initial appeal, he did not. In his, in his, before the immigration judge, he never did. In fact, in his motion, he filed a motion to the immigration judge where he conceded his removability, regardless of his, the problems of his concessions of removability in the initial proceedings. But you say, okay, the initial proceedings he didn't. To me, that's making a distinction that implies in a later proceeding it was challenged. On appeal of the remand, he did raise some sort of challenge to that. But the statutory provision regarding exhaustion states that the alien must exhaust all administrative remedies as of right. So in the subsequent appeal that, where you said he raised some sort of challenge. Right. Was that some sort of challenge addressed by the BIA or the, by the BIA? The Board merely acknowledged that he raised certain challenges. Okay. But did not address it. And as such, this Court has held that the exhaustion provision in section 242d1 of the INA is broad and clear. And as, and the Board is not required to, at least with respect to the initial appeal, the Board is not required to anticipate objections. Petitioner wholly failed. In Benedicto Rendon, it's a similar case where the alien had only challenged one of the grounds of removability. And this Court found that the Petitioner failed to challenge, failed to exhaust his remedies as to the other. So now, in your answering brief, did you make this argument? In the initial brief, yes, we did. In the subsequent replacement brief, we've, there's a footnote outlining it. But as with all jurisdictional things, it's not subject to waiver. And let's see, the second, not only must he overcome the exhaustion, the Board as I've outlined hasn't addressed it. Where is the exhaustion argument made in your replacement brief? What footnote is it? It's a rather long footnote. Ah, on page 36, footnote 11. That's where, I guess, if we have to preserve exhaustion arguments, that's where we preserved it. As a second obstacle. Well, it has to be made at some point. Oh, and we did. We've raised it. And it's clear. Even if for some reason we, exhaustion is overlooked, the Board hasn't considered it. And so remand would be the proper course if this Court finds it has jurisdiction. That footnote was talking about the issue of whether or not the first proceeding was final. Was that a final proceeding at which he was required to, to raise that issue? It's a little bit convoluted procedurally. Correct. The procedural history is convoluted. And it is difficult. But the fact of the matter is the statute is broad and that he must exhaust all, this Court in Barron has stressed the word all, and all of his administrative remedies. So procedurally, the first one, wasn't there a remand after the first? To consider the cancellation of removal application. Yes. So it wasn't final at that point. No. There was no final removal decision at that point. That is correct. So at that point, exhaustion was not necessarily required because the, the, the final decision hadn't been made. It's, the immigration judge had ordered him removed and had denied his removal, cancellation of removal application. And it was incumbent on Petitioner to raise all his objections to that, whether or not it was final. What case says that? Even when it, even when the case has not been finalized, that, that the Petitioner is required to raise all issues at that point? What, what case says that or what regulation says that? Maybe not that specifically, but if you don't, in Rendon, Benedicto Rendon, if you don't have, if you don't have a remand, the Petitioner is required to raise all issues at that point. At some point, before the proceedings are concluded, I agree with you, but. Proceedings had concluded before the immigration judge. They had not concluded because there was a remand. And what ‑‑ if there is a remand, the proceedings are still alive. Again. I mean, I thought that's why we went and banked in Abdi's salon. Right. I'm not sure it was for the purposes of exhaustion or whatever. I think it was for the type, whether a petition for review was timely. It was for purposes of finality and determining, you're right, when there was a final order of removal. So it's your position it doesn't really address this question of if there's been an underlying failure to exhaust, it's still waived and that doesn't change, even though it doesn't get reviewed until three years later? There's certainly interpretive room for this Court to address when exhaustion is required. It is my contention that the broad and clear language of the statute would require Petitioner to raise all his legal arguments in his initial appeal to the Board. But I thought that ‑‑ I mean, I bought that argument. I can't remember the name of the case. It was one of the ones that got overruled by Abdi's salon. And I don't think that's a viable argument in this circuit any longer, counsel. All right. Well, if it's not, then the Court should still ‑‑ should remand the case for the Board to consider his removability under the child abuse statute, as the Board did not address it. And neither was it ‑‑ neither was it error for the Board not to address it, because as far as the Board was concerned, it had all ‑‑ his removability had already been determined in the initial proceedings. But there was a change in the law, wasn't there? I'm not sure there was. Young, even though the embanked decision didn't come out until 2012, the initial 2011 decision had basically already outlined the conjunctive. When you ‑‑ when it's listed in the conjunctive, you only plead to the minimum. I'm pretty sure that was in the early 2011, which precedes the decisions by the Board. So, well, if it is, if it was a change of law and if it is ‑‑ if there was no reason to challenge it, his legal arguments were not the same as they are now, then. They would have changed and the Board would still not have addressed it. And there's some sense that the agency's decision, there should be some finality to the agency's decision. Once the agency has decided the removability aspects, allowing, mandating that the Board reconsider his removability arguments later on, there's got to be some respect to the finality as far as the agency is concerned as well. I agree with you, but the agency remanded it. It can't be final if there's been a remand under our ‑‑ The Petitioner asserted in his brief, even though I contend, by my reading, there was none. I mean, the change had occurred prior to. And so ‑‑ I don't know what you're talking about. That's why. As far as this argument is concerned, it's really not necessary, because the Board did not consider it. And so if it survives exhaustion, the court should remand for the Board to consider. Can you address the discussion that I was having with Mr. Zimmer with regard to whether or not felony child abuse under 273AA is categorically child abuse within the meaning of the INA? Well, I don't want to get ahead of the Board, but the Board, finding him removable for the child abuse is consistent with Ninth Circuit law. In Fergozo, the court limited it to the child abuse aspect of 237A2E, and specifically did not include the child neglect. And so as far as Fergozo requiring actual harm, the actual harm requirement would be to whether it constitutes as child abuse, I would assume. But would you agree that the statute is broader than the Federal definition of child abuse, the general definition of child abuse? Well, I ‑‑ You don't want to say? Now, the mens rea petitioner is correct that California considers it criminal negligence. But it appears that it's ‑‑ Again, first, I don't want to get ahead of the Board, but my reading of the California laws is that it's a heightened criminal negligence, closely akin to recklessness, which would, if you follow the Ibarra decision in the Tenth Circuit, which he has cited, they too, they include California in with the majority of the states. And not with the criminal negligence group. So is it fair to say that you don't want to take a position on this issue? You prefer that it be remanded for the Board to decide it in the first instance? Certainly. Yes. That is my position. It's my position that finding removability would be consistent with Ninth Circuit law, but it should be the Board that would do that. Just so I understand your position, if we don't accept your argument on the exhaustion point, then you are of the view that it should be remanded. That's correct. All right. If there's no other further questions. Thank you. I don't have anything further. Thank you very much, Mr. Jolly. Mr. Zimmer, it looks like you've got just a little under 3 minutes left. Thank you, Your Honor. I want to start with this exhaustion point. And I mean, I think the short answer is that Mr. Andrade did raise the issue. The BIA did address it. And the government in its brief, if the government now wants to say that Mr. Andrade addressed it at the wrong time or at the wrong place, that appears nowhere in its brief. So just so the record is clear on this, where did your client address the – where did your client challenge? In the administrative proceedings, where did he challenge the conviction? So it's in his second brief to the BIA, which is on, I believe it's page 35 of the administrative record. He – yeah, it's on page 35. And I can actually quote you what he said, which he said, Petitioner's offense in is no way a form of child abuse lacking the required risk of harm to a child and not a showing of actual injury to the child. That's a direct quote from Mr. Andrade's second brief to the Board of Immigration  And it appears on page 35 of the administrative record. And again, I would also point out that the BIA addressed this issue on the merits in its first opinion, and that appears on page 375 of the administrative record. And it's a short statement, but it's clearly holding on the merits. And what it said is that the conviction – and again, this is a quote – that the conviction subjects him to removal as having been convicted of a crime of child abuse under 237A2E1. But that's what I asked government counsel, if the administrative agency had addressed the issue. And he said, no, it just acknowledged that the – it just acknowledged that the argument had been raised but didn't address it. Well, so that's the government's interpretation of that footnote. But I would say that that's just simply not what the footnote says. I mean, it – the footnote does acknowledge that he hadn't raised the issue, that's for sure. But it then has a second part of the sentence. And again, what it says is that it – and again, it refers to the conviction, to Mr. Andrade's conviction – it subjects him to removal as having been convicted of a crime of child abuse. And when Mr. Andrade raised – sorry. I mean, reading that footnote, it does read to me as though it's just a parenthetical observation. Well, I think it's – I mean, whether – I mean, it still holds at the end of the day that the conviction subjects him to removal. And I think if you look at what the BIA said – BIA said in the second appeal, that becomes clear. But if the conclusion is that he's not contesting the fact that he was convicted of child abuse under the California felony provision that renders him removable, and the footnote says – and he's not challenging that decision, isn't that – isn't that saying he's not raising this issue again before us today? Well, I think if there was a period right after that, then that would be the end of the matter. But the sentence then goes on to say that it – and again, it is the conviction – subjects him to removal as having been convicted of. So I think – Well, okay. So they left out the fact – and that fact subjects him to removal as having been convicted of a crime. But that's still not a holding. I think it is, Your Honor. It's still not addressing the issue in this appeal. It's saying we don't need to go there because he is not challenging. Well, again, I don't think that's actually what it says. And I think it's actually – if you look at what the BIA did the second time when Mr. Andrade – Your Honor, I see my time's up. Do you mind if I finish? No, go ahead and finish your answer. I think if you look at what the BIA did the second time, it becomes clear. Because the second time, this case was before the BIA, Mr. Andrade clearly did raise this issue. He raised it in his brief. And what the BIA said is we already addressed this argument in our first brief. It said we already affirmed the IJ's findings of removability. This is the second – is it not? No, no. This is the first – this is the first decision, Your Honor. The first time. And in the BIA's second decision, it specifically referred to this as a decision on the merits. Okay. Thank you very much, Your Honor. I think we're clear on it now. Thank you very much. Thank you. The case just argued is submitted. Thanks again for taking the case. And we'll get you an answer as soon as we can. The case is submitted. And the last case on the calendar, Romero-Escobar v. Holder, has also been ordered submitted on the brief.
judges: Tallman, Rawlinson, Dearie